Brown *v.* Lexington and Danville Railroad Co.

---

JOHN G. BROWN *vs.* THE LEXINGTON AND DANVILLE RAIL-ROAD COMPANY.

Where it appears that by the judgment of a court in another state, between the same parties, all the material matters of equity relied upon by the complainant in his suit in this court are adjudicated and settled, the bill of complaint will be dismissed.

A court of equity will not permit a party who has had his rights fully investigated and decided in a court of equity in another state to avoid a final decision in that tribunal, and to raise for reinvestigation the same questions on the same facts.

*William Halsted,* for defendant.

*Strong,* for complainant.

THE CHANCELLOR. The complainant's bill is founded upon a contract entered into between the parties in the year 1857. The complainant was a broker, transacting business in the city of New York. The defendants are a corporation chartered and conducting railroad operations in the state of Kentucky. In May, 1857, the defendants placed in the hands of the complainant, to be sold, exchanged, or negotiated for their benefit, one hundred and twenty-four bonds of the company, for $1000 each. For these bonds the complainant was to account to the company at the rate of sixty-five dollars on the hundred. After satisfying an acceptance for $15,000, made by the

complainant, the balance of the net proceeds was to be deposited in the Bank of America to the credit of the president of the company. Thirty-five per cent. of the par value of the bonds, or any excess which the complainant might receive over sixty-five per cent., was, by the terms of the agreement, to pay the complainant's commissions and all expenses.

On the fourth of August, 1857, the company, by a letter of attorney of that date, reaffirmed their contract with the complainant, and constituted him their attorney in fact, empowering him, among other things, to exchange their bonds for real estate or other property, to sell, exchange, or mortgage such real estate so as to convert it into cash or on reasonable time, and to control such real estate as agent or trustee of the company.

By virtue of this contract, and as the bill alleges by virtue of instructions given or of authority conferred by the president of the company, the complainant disposed of thirty-nine of said bonds, *viz.* twenty-three in purchase of a farm at Prospect Plains, with the stock, farming implements, and growing crops, in this state, nine in exchange for real estate in the city of New York, five in purchase of an invoice of marble at San Francisco, one delivered to counsel in payment for his services, leaving one not clearly accounted for. The remaining eighty-five bonds passed into the hands of a receiver, appointed by the Supreme Court of the state of New York upon the application of the company.

In the month of December, 1857, the letter of attorney to the complainant was revoked, and in January, 1858, by an injunction issued out of the Supreme Court of New York, at the instance of the company, he was restrained from any further sale or disposition of the bonds.

The bill charges that the contract between the parties was violated by the company, and claims that, by virtue of the contract, the complainant is entitled to receive thirty-five per cent. on the par value of the bonds thus

placed in his hands, which would or might have been realized by the complainant but for the illegal interference of the company. The bill further claims that the complainant was entitled to hold the said bonds as collateral security for acceptances made and liabilities incurred by him for the benefit of the company which are still outstanding against the defendant.

The bill prays that an account may be taken of all the transactions between the parties in respect to their said agreement, that the company may be decreed to pay to the complainant what is justly due him, and that the defendants may be restrained from proceeding at law against the complainant.

It is admitted by the complainant's bill, and established by the evidence in the cause, that a suit was instituted by the company against the complainant in the Supreme Court of New York in relation to these bonds, and a judgment therein recovered against the complainant prior to the commencement of this suit. It becomes material, therefore, to inquire how far the judgment in that cause may have concluded the rights of the parties or may affect the complainant's title to relief in this court.

The railroad company, by their complaint in that cause, after setting out the contract between the parties, claimed from the defendant sixty-five dollars on the one hundred of the amount of the bonds disposed of by Brown, and that he should surrender the residue of the bonds remaining undisposed of, or pay to the company sixty-five dollars on the one hundred on account thereof. The prayer of the complaint was—(1) that the defendant should be adjudged to deliver to the company the bonds retained by him, and that in the meantime he should be enjoined from disposing of them; (2) that the property taken by Brown for the bonds disposed of by him should be disposed of under the order of the court, and the proceeds thereof applied to the payment of sixty-five per cent. of the amount of the bonds disposed of; and in case the pro-

ceeds of the sale were insufficient for that purpose, that the company should have judgment against the defendant personally for the deficiency, and that the plaintiff should have such other and further relief in the premises as might be agreeable to equity and good conscience.

By his answer to this complaint, Brown, the defendant, set up by way of defence, among other matters—the powers conferred upon him by the company as their agent and trustee; the exchange of the bonds for real estate in pursuance of the powers conferred; that such investments were made in good faith and with the knowledge and approval of the company; that he had given letters of credit to the company, and had made acceptances for them to a large amount, which were still outstanding; that he was entitled to hold the bonds placed in his hands for his own profit and indemnity; that the company had no right, without his assent, to revoke his authority and discontinue his agency until his charges against the company were satisfied; and as a counter claim, the defendant insisted that the plaintiffs were indebted to him in a large amount for services performed, for commissions on said bonds, for outstanding acceptances, and for damages. Very voluminous evidence was taken by the parties, which has also been used by consent in this case. At May term, 1859, it was adjudged by the court that the defendant should, upon five days' notice, convey to the receiver the farm at Prospect Plains, in this state, with the farming tools, furniture, and personal property purchased by the defendant with the plaintiff's bonds, and that the same should be sold by the receiver at public auction; that upon a compliance by the defendant with this order, it should be referred to a referee to ascertain and report the amount to be allowed to the defendant for acceptances and advances made by him for the company, and that the receiver, out of the proceeds of the sale, should first pay to the defendant what should be found due him on said account above the sum due

from him to the plaintiff for nine bonds not invested in real estate; that he should pay the plaintiffs sixty-five per cent. of the amount of thirty bonds of the plaintiffs exchanged by the defendant for real estate, being $19,500, with interest thereon from December 24th, 1827; that the balance of the proceeds of such sale, if any, should be paid to the defendant, and that the eighty-five bonds remaining undisposed of in the hands of the receiver should be delivered to the plaintiffs.

It is evident, from this statement of the pleadings and judgment in the suit between the parties in the Supreme Court of New York, that every material matter of equity relied upon by the complainant in this cause was relied upon in that; that every claim presented in *this* case was urged in *that*, and that the court virtually decided all the issues made in this cause, so far as the complainant's right to an account is concerned, and settled the whole equity of the case.

It is true that that judgment was not carried into execution, and that it has not been pleaded in this case as a bar to the complainant's suit. It is, nevertheless, the judgment of a court having jurisdiction of the parties and of the subject matter in a suit between the parties in this cause upon the very matters now in issue between them, and the judgment was not carried into execution solely because of the failure of the defendant to comply with the order of the court to convey the property to the receiver. The question was one peculiarly proper for the cognizance of the courts of the state of New York. It grew out of a New York transaction. The contract between the parties was made there—the bonds were negotiated there—the property acquired in New Jersey formed but a part of a very extensive transaction, the settlement of which by the courts of that state necessarily involved all the material questions at issue between the parties. Aside, therefore, from all questions as to the conclusive effect of this judgment in New York, I am clear that the

judgment in that case ought to be decisive of the rights of the parties here, and that this court, sitting as a court of equity, ought not to permit a party, who has had his rights fully investigated and decided in a court of equity in another state, to avoid a final decision in that tribunal, and to raise the same questions upon the same facts, and to ask a reinvestigation at the hands of this court.

But it is urged, on the part of the complainant, that he was prevented, by legal proceedings instituted by the railroad company in this state, from complying with the order of the Supreme Court of New York, and has thus been deprived of the opportunity of availing himself of the benefits of that decree.   Without pausing to investigate the validity of this objection, either in point of law or of fact—assuming it to be true and well founded, has the defendant any right to an account in this court as against the defendants?   He claims to be an agent and trustee of the defendants, and, as such, to have purchased real and personal estate for their benefit, to have expended large sums in its improvement, and to have incurred heavy expenses in its management; that the defendants are seeking by an action at law to recover the bonds paid or exchanged by him for the real estate thus purchased, and that he is entitled to an account and a settlement of all the disbursements and expenses thus made and incurred. A simple statement of the facts disclosed by the pleadings and the evidence in the case will show the grounds of the complainant's title to an account.

In May, 1857, the railroad company placed one hundred and twenty-four mortgage bonds of the company, for $1000 each, in the hands of the complainant, to raise money to meet the immediate and pressing necessities of the corporation.   It is obvious, from the whole evidence in the case, that the design of the company was to convert them into cash or available funds as speedily as possible.   To this end the complainant was authorized to sell or negotiate the bonds or to purchase real estate and con-

vert it into money. The only limitation imposed was that he should account to the company for sixty-five dollars on the one hundred for all the bonds disposed of.

He continued to act as the agent of the corporation, with power to execute the trust reposed in him, from May, 1857, till about the 1st of January, 1858, when his agency was terminated, and eighty-five bonds, then remaining in his hands, were reclaimed by the company. During that period he had sold, exchanged, or otherwise disposed of, thirty-nine bonds, of the par value of $1000 each, and for which the company was entitled, by virtue of their contract, to receive sixty-five per cent., or $25,350. It is not pretended that the complainant has ever paid the company the value of a single bond, or that the company have ever realized a dollar from his operations.

Of the thirty-nine bonds disposed of by the complainant nine were invested in real estate in the city of New York, the whole of which, within a few months of making the investment, were sold under previous mortgages, and proved insufficient to satisfy them. Twenty-three of the bonds were, on the 29th of June, 1857, invested in the purchase of the farm at Prospect Plains, in this state, and in the purchase of the furniture, stock, farming utensils, and growing crops thereon. The complainant immediately entered into possession of the house and farm thus furnished and stocked, and has held and enjoyed it as his own, receiving the rents, issues, and profits from that day to this. In May, 1857, five of the bonds were invested in an invoice of marble in California, which is traced into the hands of the complainant's brother, but of which no account has been rendered to the defendants. The remaining two bonds are not pretended to have been disposed of in pursuance of any authority conferred on the complainant or for the benefit of the defendant. It is obvious, then, and so it was adjudged by the Supreme Court of New York, that the complainant is lawfully indebted to the defendants, and that he can have under the

R.*

terms of his contract no claim against them as trustee
for the management of the real estate. No matter what
may have been the disposition of that real estate, the
facts will not warrant calling the defendants to an account.
All the investments in personal property were made
prior to the execution of the letter of attorney by the de-
fendants and were unauthorized. Giving to the com-
plainant the full benefit of his *allegation*, which is not
distinctly in proof in the cause, that the title to the farm
in question has been decided to be in the company, and
that they have received the value of it, it does not mate-
rially aid the complainant's case or entitle him to an
account. The farm, with all the improvements put upon
it by the complainant, is of far less value than the amount
which the defendants were entitled to receive on account
of the bonds expended in its purchase. The farm, there-
fore, admitting it to have been recovered by or for the
benefit of the defendants, has not realized to them sixty-five
per cent. upon the amount of the bonds vested in its pur-
chase. Even if it be admitted that the complainant might in
equity have some claim to compensation for the manage-
ment of the defendants' land, and for permanent improve-
ments made upon it—he is, nevertheless, indebted to the
defendants in $5850, with interest for the amount of sixty-
five per cent. on nine bonds of the defendants not invested
in real estate in pursuance of his contract. This sum he
is, in equity and by the express judgment of the Supreme
Court of New York, bound to pay before he is entitled to
any remuneration for his services. It is clearly shown by
the evidence that the complainant is under no liability for
the defendants; that nothing has been advanced by him,
either upon his letters of credit or his acceptances, for the
benefit of the company, and that all his acceptances have
been taken up and satisfied. In any aspect of the case
the complainant is not entitled to an account. He is largely
indebted to the defendants. He has no claim in equity
to an account as trustee. Every defence which he may

have against the demand of the defendants in their action at law is available at law as well as in equity.

The injunction heretofore issued against the defendants must be dissolved and the complainant's bill dismissed with costs.

13   199
53L 222

13   199
54L 559

13   199
55L  49

13   199
57  893